768 F.2d 311
 56 A.F.T.R.2d 85-5660, 85-2 USTC P 9570
 UNITED STATES of America and Tammy Harris, Special Agent,
Internal Revenue Service, Appellants-Cross-Appellees,
v.
COMMUNITY BANK AND TRUST COMPANY and Nettie Robinson,
Vice-President/Cashier, Appellees-Cross-Appellants.
 Nos. 84-1585, 84-1915 and 84-2000.
 United States Court of Appeals,
Tenth Circuit.
 July 17, 1985.
 
 Francis M. Allegra, Tax Div., Dept. of Justice, Washington, D.C. (Layn R. Phillips, U.S. Atty., Tulsa, Okl. and Carleton D. Powell and Michael L. Paup, and Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., U.S. Dept. of Justice, Washington, D.C.), with him on the briefs, for appellants-cross-appellees.
 David B. McKinney, Boesche, McDermott & Eskridge, Tulsa, Okl., for appellees-cross-appellants.
 Before SEYMOUR and DOYLE, Circuit Judges, and CARRIGAN, District Judge*.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 This is a summons enforcement proceeding which involves the Community Bank & Trust Company ("The Bank") and the Internal Revenue Service ("IRS"). The Community Bank and Trust Company objected to the amount of reimbursement offered by the government for the purpose of defraying the costs of complying with a summons to provide records of a customer's account.
 
 
 2
 The Bank was a third party in the IRS investigation of its customer, Tilman E. Pool, Jr. On September 15, 1982, the IRS summoned the Bank to provide all records of Pool's transactions starting July 1, 1978, through February 1982. The summons was issued in conjunction with a joint civil and criminal investigation of Mr. Pool's alleged failure to file tax returns for the period 1979-1981.
 
 
 3
 On October 15, 1982, an IRS agent delivered another summons to the Bank on the Pool account, asking for the same information requested in the September 15th summons, but giving the Bank a longer time within which to comply. The Bank objected to the summons and asked the IRS to consider alternative ways of collecting the information. The IRS rejected the Bank's suggestions. The Bank partially complied with the summons, but refused to comply fully, stating that the summons was unreasonably burdensome and that the reimbursement rates for work done were too low. On December 28, 1982, the IRS filed the instant action, seeking to enforce the October summons.[1] The Bank continued to search and copy records until the IRS, on July 12, 1983, informed the Bank that the records were no longer needed.
 
 
 4
 The Bank is a small suburban operation with 63 employees. Through its record-keeping, it provided the IRS with Mr. Pool's bank statements and deposit slips at little cost. The major burden of complying with the summons was finding all copies of Mr. Pool's certified checks. The Bank has no method of determining whether certified checks are in a given individual's name without examining each one. In this case, the Bank employees searched through over 67,000 certified checks in order to determine if any were in Mr. Pool's name. The Bank estimated that its salary costs for full compliance with the summons amounted to $12 to $18 per hour. It estimated a total expense of $78,000 to comply with the summons.
 
 
 5
 The IRS offered the Bank a rate of $5 per hour for search time and five cents per copy, following proposed Regulation 301.7610-1 of the Internal Revenue Code of 1954 ("Section 7610").[2] Both the magistrate and the district judge held that this regulation, which was adopted July 18, 1983, was not applicable to the summons in this case because the summons was issued prior to July 18, 1983. The Bank challenged the rate authorized by Section 7610 as being "unreasonably" low, but continued to gather the information requested. A federal magistrate hearing the case found that the Bank's labor costs were $15 per hour, much higher than the $5 reimbursement rate established by IRS regulation. He also found that the Bank used between $250 and $300 worth of copying supplies and that the reimbursement rate of ten cents per copy was too low.
 
 
 6
 The district court adopted the magistrate's findings. It allowed reimbursement at a rate of $10 per hour. The court also held that the Bank was the prevailing party and should receive attorneys' fees at $75 per hour. The IRS has appealed the issues of reimbursement and attorneys' fees.
 
 
 7
 First, the IRS argues that the district court improperly exercised its authority when it reimbursed the Bank at rates higher than those authorized by the IRS. Since this is a threshold matter, it is correct in maintaining that this court should review the issue de novo. Such questions are reviewable under a de novo standard rather than the "abuse of discretion" or "clearly erroneous" standard. See Farmer v. Arabian American Oil Co., 379 U.S. 227, 231-32, 85 S.Ct. 411, 414-15, 13 L.Ed.2d 248 (1964).
 
 
 8
 The IRS asserts that the magistrate erred in finding Section 7610 inapplicable to the reimbursement rate in the present case and that the district court erroneously relied on that finding. Second, the IRS argues that the district court did not have the authority to reimburse the Bank at rates higher than authorized by Section 7610.
 
 
 9
 We agree with the IRS that Section 7610 was in force at the time that the magistrate considered this case. Section 7610 was adopted on July 18, 1983, several weeks before the release of the magistrate's findings. Treasury regulations such as Section 7610 do not require a 30-day waiting period which is required by the Administrative Procedures Act. Redhouse v. Commissioner, 728 F.2d 1249, 1251 (9th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 506, 83 L.Ed.2d 397 (1984).
 
 
 10
 However, the fact that Section 7610 was applicable does not dispose of the question whether the district court erred in awarding additional reimbursement.
 
 
 11
 Our holding is that the district court properly allowed the bank reimbursement in excess of the amount authorized by Section 7610. On occasion, courts have scrutinized the appropriateness of a summons and relieved the third party of the burden which flows from third party record keepers. United States v. Columbia Broadcasting System, Inc., 666 F.2d 364, 372 (9th Cir.), cert. denied, 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1329 (1982). See also United States v. Southwestern Bank & Trust Co., 693 F.2d 994, 996 (10th Cir.1982) (lifting an IRS summons of similar magnitude).
 
 
 12
 The IRS argues that Section 7610 withdrew the jurisdiction of the federal courts to review IRS reimbursement rates.
 
 
 13
 We find nothing in the language or history of Section 7610 which supports the proposition that federal courts have lost the inherent power to scrutinize IRS administrative regulations. The purpose of Section 7610 was merely to speed up the reimbursement of third parties who conduct searches for the IRS, not to withdraw federal court's authority to scrutinize this administrative regulation. The implementation of Section 7610 had no effect on a federal court's power in this area. In general, courts are allowed to scrutinize, modify, and even refuse to enforce administrative summonses. United States v. Bisceglia, 420 U.S. 141, 146, 95 S.Ct. 915, 919, 43 L.Ed.2d 88 (1975). See also Securities and Exchange Commission v. Wheeling-Pittsburgh Steel Corp., 648 F.2d 118, 123 (3d Cir.1981).
 
 
 14
 The district court ruled that the cases cited by the IRS do not establish that the courts have lost their power to protect parties from burdens imposed by the agencies. United States v. Southwestern Bank and Trust Co., 693 F.2d 994, 996 (10th Cir.1982); Securities and Exchange Commission v. Arthur Young, 584 F.2d 1018, 1033 (D.C.Cir.1978), cert. denied, 439 U.S. 1071, 99 S.Ct. 841, 59 L.Ed.2d 37 (1979).
 
 
 15
 Accordingly, we hold that the district court properly set the amount of the reimbursement. The IRS offered the Bank $5 per hour and ten cents per copy for its work. The magistrate set a rate of $10 per hour and fifteen cents per copy. The actual costs sustained by the Bank were greater than those figures. It was within the discretion of the district court to determine an intermediate amount of reimbursement.
 
 
 16
 The IRS also contends that the district court erred in awarding attorneys' fees under the Equal Access to Justice Act ("EAJA"). 28 U.S.C. Sec. 2412. The EAJA provides that a prevailing party shall recover attorneys' fees from the government "unless the court finds that the position of the government was substantially justified." Id. Sec. 2412(d)(1)(A). The test of substantial justification is basically that of "reasonableness in both law and fact." United States v. 2,116 Boxes of Boned Beef, 726 F.2d 1481, 1487 (10th Cir.) cert. denied, --- U.S. ----, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984). See also Flow Boy, Inc. v. United States, Nos. 82-1823, 82-1828, 82-1965, and 82-1966 (10th Cir. Jan. 20, 1984). The IRS must therefore show that it had a reasonable basis for the facts alleged; that it had a reasonable basis in law for the theory advanced; and that the facts supported its theory. United States v. 2,116 Boxes of Boned Beef, 726 F.2d at 1487. However, this test does not demand that the IRS prove it had a substantial probability of success in litigating the issue. Id., citing H.R.Rep. No. 1418, 96th Cong. 2d Sess. 10-11 (1980), U.S.Code Cong. & Admin.News 1980, p. 4989-90.
 
 
 17
 The district court found that the IRS's position was not substantially justified and awarded the Bank attorneys' fees. The court's findings of fact are to be reversed only if clearly erroneous, Fed.R.Civ.P. 52(a), and its conclusions of law are reviewable de novo. United States v. 2,116 Boxes of Boned Beef, 726 F.2d at 1486. Because we hold, contrary to the district court, that Section 7610 does apply to the case at bar, we must find that the district court erred as a matter of law on this issue. Although Section 7610 is not dispositive of this case, the IRS was substantially justified in relying upon it. However, we agree with the district court that the IRS's position on the enforcement of the October summons was not substantially justified.
 
 
 18
 We note that the IRS effectively withdrew its summons after the Bank had completed most of the work required by the summons; the issue of enforcement of the summons was mooted before it could be resolved by the district court. Accordingly, the Bank should receive attorneys fees on the summons issue, but not on the issue of reimbursement. See Cinciarelli v. Reagan, 729 F.2d 801, 809 (D.C.Cir.1984) (EAJA permits a partial award). Because the district court originally awarded attorneys' fees for the reimbursement issue as well as the summons issue, the case is remanded for a determination of attorneys' fees consistent with this opinion.
 
 
 19
 It is so ordered.
 
 
 
 *
 Honorable Jim R. Carrigan, of the United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 The burdensomeness of the September summons was already raised in In Re Summons v. Community Bank & Trust Co., which was dismissed as moot. The district court in the instant case found that the issue of the September summons' burdensomeness was identical to the burdensomeness issue raised in regard to the October summons
 
 
 [2]
 Section 7610 provides in pertinent part:
 2) Payment rates. The following rates are established.
 (i) Search costs. (A) For the total amount of personnel time required to locate records or information $8.50 per person hour for summonses issued after July 19, 1983. For summonses issued on or before such date, $5.00 per person hour.
 (B) ...
 (ii) Reproductions costs. (A) For copies of documents $.20 per page for summonses issued after July 19, 1983. For copies of documents issued on or before such date, $.10 per page.